UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 10, 2013

LETTER TO COUNSEL:

      RE:    *Tamara Osborne v. Commissioner, Social Security Administration*;
               Civil No. SAG-12-0380

Dear Counsel:

On February 8, 2012, the Plaintiff, Tamara Osborne, petitioned this Court to review the Social Security Administration's final decision to deny her claims for Supplemental Security Income and Disability Insurance Benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment and Ms. Osborne's response. (ECF Nos. 13, 19, 21). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Ms. Osborne filed her claims for benefits on July 14, 2008, alleging disability beginning on July 2, 2008. (Tr. 160-73). Her claim was denied initially on September 30, 2008, and on reconsideration on April 7, 2009. (Tr. 110-14, 116-19). An Administrative Law Judge ("ALJ") held a hearing on May 16, 2011. (Tr. 36-67). Following the hearing, on July 29, 2011, the ALJ determined that Ms. Osborne was not disabled during the relevant time frame. (Tr. 17-35). The AC denied Ms. Osborne's request for review (Tr. 1-6), so the ALJ's decision constitutes the final, reviewable decision of the agency.

The ALJ found that Ms. Osborne suffered from the severe impairments of curvature of the spine and depressive disorder. (Tr. 22). Despite these impairments, the ALJ determined that Ms. Osborne retained the residual functional capacity ("RFC") to:

> [P]erform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except; the claimant is able to stand and/or walk at least 2 hours in an 8 hour workday; can sit for a total of 6 hours in an 8 hour workday; only occasionally climbing ramps or stairs; never climbing ladders, ropes, or scaffolds; only occasionally balancing, stooping, kneeling[,] crouching, or crawling; the claimant has moderate limitations in her ability to carry out detailed instructions, and maintain attention and concentration for extended periods; the claimant has moderate limitations in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; the claimant had

>  moderate limitations in her ability to work in coordination [and] proximity to others without being distracted by them; the claimant is moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; the claimant is moderately limited [in] her ability to interact appropriately with the general public; the claimant is moderately limited in her ability to respond appropriately to changes in the work setting. These nonexertional impairments result in her being able to understand and follow simple instructions independently, function within a basic routine and able to interact and relate socially.

(Tr. 25). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Ms. Osborne could perform jobs that exist in significant numbers in the national economy, and that she was therefore not disabled during the relevant time frame. (Tr. 29-30).

Ms. Osborne presents three arguments on appeal: (1) that the ALJ failed to correctly evaluate her back impairments; (2) that the ALJ failed to properly weigh the opinions of her treating physicians; and (3) that the ALJ failed to consider the combination of her mental and physical impairments. Each argument lacks merit.

Ms. Osborne challenges the evaluation of her back impairments at steps two and three. First, she asserts that the ALJ should have identified her lumbar degenerative disc disease as a severe impairment instead of her mild scoliosis. Pl. Mot. 11-13. An impairment is considered "severe" if it *significantly limits* the claimant's ability to work. *See* 20 C.F.R. § 404.1521(a) (emphasis added). The claimant bears the burden of proving that her impairment is severe. *Johnson v. Astrue*, Civil Action No. PWG-10-3139, 2012 WL 203397, at *2 (D. Md. Jan. 23, 2012) (citing *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995)). While the ALJ found that Ms. Osborne's scoliosis significantly limited her ability to work, he found no evidence that it "render[ed] her unable to perform basic work activities." (Tr. 26). I can find no contradiction or error in the ALJ's statements regarding Ms. Osborne's scoliosis. One can be limited in performance, but still able to perform.

Regarding her degenerative disc disease, Ms. Osborne has not directed this Court to any medical evidence indicating that the impairment caused significant or lasting functional limitations in her ability to work. Ms. Osborne is correct that non-treating, non-examining physician Dr. Johnston identified "lumbar degenerative disc disease with lumbar facet hypertrophy" as the primary physical impairment diagnosis to consider in Ms. Osborne's disability determination. (Tr. 395, 487). However, Dr. Johnston found that Ms. Osborne was capable of light work despite that diagnosis. (Tr. 487-94) (specifying that Ms. Osborne was capable of lifting twenty pounds occasionally and ten pounds frequently, standing/walking for at least two hours, and sitting for six hours). A review of Ms. Osborne's medical records reveals that conservative treatments managed her back pain. (Tr. 499-500) (showing that Ms. Osborne reported "excellent relief" after a thoracic facet joint injection), (Tr. 501-02) (reporting that Ms.

Osborne was "much improved" after a bilateral lumbar facet joint injection). Moreover, even if I were to find the ALJ erred in his evaluation of Ms. Osborne's impairments at step two, such error would be harmless. Because Ms. Osborne made the threshold showing that other disorders constituted severe impairments, the ALJ continued with the sequential evaluation process and considered all of the impairments, both severe and non-severe, that significantly impacted Ms. Osborne's ability to work. *See* 20 C.F.R. § 404.1523.

Furthermore, I do not agree that the ALJ's step three analysis was deficient because he did not specifically identify her degenerative disc disease and analyze the related criteria under Listing 1.04. Despite the general nature of the ALJ's language describing his evaluation of the Listings, I find that the ALJ provided substantial evidence to support his step three finding as to Listing 1.04. The ALJ first noted that there was no assertion that any Listing had been met or equaled. (Tr. 23). Second, the ALJ noted that the DDS physician concluded that Ms. Osborne's impairments did not meet or equal any Listing. *Id.* Finally, the ALJ stated that he had reviewed the medical evidence of record and could not find that it established that Ms. Osborne's impairments met or equaled any Listing. *Id.* Moreover, the ALJ examined the objective medical evidence pertaining to Ms. Osborne's degenerative disc disease in his RFC assessment, and accurately summarized that she had "good relief" after a series of injections. (Tr. 26). I cannot find that the ALJ erred in his analysis.

Next, Ms. Osborne contends that the ALJ assigned too little weight to the opinions of two treating physicians, Drs. Karmachandra Nair and Faisal Sayeed. A treating physician's opinion is not entitled to controlling weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *see also* 20 C.F.R. § 404.1527(c)(3) (stating that "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion."). In July 2008, Dr. Nair opined that Ms. Osborne could only sit for four hours, stand for two hours, walk one hour in an eight-hour workday, and lift only ten pounds.[1] (Tr. 361-64) (predicting also that the disability would last for one year). The ALJ found Dr. Nair's opinion unsupported by clinical and laboratory diagnostic techniques and other evidence in the record, including Ms. Osborne's own statements. (Tr. 27). Dr. Nair's treatment notes indicate that she complained of low back pain after she strained her back at work in July, 2008, that he prescribed Percocet to manage her pain, and that he referred her to specialists for pain management. (Tr. 345, 371, 418, 433, 435-40). Dr. Nair reported that Ms. Osborne said she could not work due to back pain, (Tr. 433), and he recommended she be put in "off-work status" for six months in December, 2008. (Tr. 428). On July 15, 2011, Dr. Nair opined that Ms. Osborne could lift no more than ten

---

[1] Ms. Osborne attributes a May, 2011 medical assessment to Dr. Nair, but it was actually submitted by Dr. Sayeed. (Tr. 508-12). Further, Ms. Osborne states that the ALJ did not "specifically address" Dr. Nair's July, 2011 medical assessment, (Tr. 515-19), and his treatment notes from 2010 and 2011, (Tr. 520-45). Those records were submitted well after the May, 2011 hearing with the ALJ. However, I have reviewed the records and find that they would not have altered the AC's denial to review.

pounds, sit for no more than two hours, stand/walk for no more than an hour, and that she was completely disabled from any work activity. (Tr. 515-19) (further noting that her limitations began in 2005). There is substantial evidence in the record to contradict Dr. Nair's extreme restrictions. As the ALJ noted, Ms. Osborne worked as a housekeeper in 2010 four days per week and every other weekend.[2] (Tr. 27). She testified at the hearing that she could lift thirty pounds. (Tr. 60). I cannot find fault in the ALJ's assignment of less than "great weight" to Dr. Nair's opinion.

Turning to Dr. Sayeed, the ALJ rejected his opinion as well because it lacked support from clinical and laboratory diagnostic findings and was inconsistent with other substantial evidence of record. (Tr. 27). The ALJ thoroughly detailed the incongruities between Dr. Sayeed's opinion as to Ms. Osborne's limitations, (Tr. 456-60), Dr. Sayeed's own clinical findings, and other evidence. Dr. Sayeed indicated that lumbar range of motion was decreased to only 85 degrees from 90 degrees, yet he opined that she was never able to stoop. (Tr. 27, 397, 457). Dr. Sayeed asserted that Ms. Osborne was incapable of even sedentary work while she was performing light work as a housekeeper. (Tr. 27, 43-44, 459). The ALJ's conclusion was therefore supported by substantial evidence.

Ms. Osborne also argues the ALJ failed to consider the required factors in determining the weight given to Drs. Nair and Sayeed. Pl. Mot. 17-18. However, it is clear from the ALJ's opinion that he engaged in the required analysis and considered each of the factors listed in 20 C.F.R. § 404.1527(d). The ALJ properly determined that the inconsistencies and lack of medical support outweighed the duration and nature of the physicians' relationship with Ms. Osborne.

Finally, Ms. Osborne argues the ALJ failed to consider the combination of her physical and mental impairments. Pl. Mot. 18-21. Her argument fails. In his opinion, the ALJ discussed in detail the evidence pertaining to all of Ms. Osborne's physical and mental impairments and her statements about her limitations.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 13) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 19) will be GRANTED. The Clerk is directed to CLOSE this case.

---

[2] Ms. Osborne asserts that her 2010 work history demonstrates that she is unable to work because she missed work one day per week. In fact, Ms. Osborne's testimony about her housekeeping work during the period in question did not indicate that she missed work, but that she was on a regular part-time schedule for approximately a year. (Tr. 43-44).

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge